**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-04-157 |
| | § | C.A. No. C-05-423 |
| JUAN RODRIGUEZ MARTINEZ, | § | |
| | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER DISMISSING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE, ORDER DENYING CERTIFICATE OF APPEALABILITY, AND ORDER ON REMAINING MOTIONS**

Pending before the Court is Juan Rodriguez Martinez's ("Martinez") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (D.E. 19),[1] which was received by the Clerk on August 18, 2005. The Court ordered the government to respond (D.E. 20). On October 18, 2005, the government filed a response in which it moves for summary judgment on the grounds that Martinez's motion is barred by his waiver of § 2255 rights. Alternatively, the government moves for dismissal on the grounds that the motion and record in the case show that Martinez is not entitled to relief. (D.E. 23). The government also moves to supplement the record with the affidavit of Martinez's counsel, Constance A. Luedicke, which the Court grants.

Subsequent to the filing of the government's response, Martinez has filed a number

---

[1] Dockets entries refer to the criminal case, C-04-cr-157.

of documents, motions and replies (D.E. 25-33, 35, 37-39), all of which the Court has considered. Additionally, the Court ordered the government to file a supplemental response (D.E .34), which was filed on March 24, 2006. (D.E. 36). Martinez has since filed a reply to the response and other documents with the Court (D.E. 37-39), all of which ALSO have been considered.

As discussed in detail in this Order, all but one of Martinez's claims are subject to dismissal because he waived his right to file them. The sole remaining claim, which falls outside the scope of his waiver, fails on its merits. For these reasons, discussed in more detail below, the Court DENIES his § 2255 motion. Additionally, the Court DENIES Martinez a Certificate of Appealability.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

## II. FACTS AND PROCEEDINGS

On April 14, 2004, Martinez was charged in a single-count indictment with knowingly and intentionally possessing with intent to distribute approximately 122 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). (D.E. 1). On May 25, 2004, Martinez pleaded guilty pursuant to a written plea agreement. (D.E. 10, 11). In exchange for his guilty plea and his waiver of appellate and § 2255 rights (discussed below), the government agreed to recommend that he receive a three-level credit for acceptance of responsibility, and to recommend a sentence within the applicable guideline

range. (D.E. 11). The plea agreement contained a voluntary waiver of Martinez's right to appeal and to file a § 2255 motion:

> Defendant is aware that Title 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only (a) the sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines, which had not been requested by the United States. Additionally, the defendant is aware that Title 28, U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

(D.E. 11 at ¶ 6) (emphasis in original). The agreement was signed by both Martinez and his counsel. (D.E. 11). Martinez testified at his rearraignment that he read the agreement and discussed it with his attorney, and that he understood and signed the agreement. (D.E. 17, Rearraignment Transcript ("R. Tr.") at 15-16).

The Court questioned Martinez under oath at the rearraignment to ensure that his plea was voluntary and knowing and to ensure that he understood and was voluntarily relinquishing his appeal rights and right to file a § 2255 motion. In ensuring that his waiver of appellate rights and § 2255 rights was voluntary, the Court asked Martinez:

> **THE COURT:** Also by this agreement you're giving up your right to appeal your sentence to the Fifth Circuit Court of Appeals and you are giving up your right to file a motion to later vacate your sentence and your conviction, as well as any other post-conviction petition.

Do you understand those right --

**THE DEFENDANT:** Yes, your Honor.

**THE COURT:** -- that you are giving up? Do you understand those rights that you are giving up?

**THE DEFENDANT:** Yes, your Honor.

**THE COURT:** And are you willing to do so?

**DEFENDANT:** Yes, your Honor.

(R. Tr. at 17). It is clear from the foregoing that Martinez's waiver was knowing and voluntary. See Fed. R. Crim. P. 11(b)(1)(N) (obligating court to ensure defendant understands any waiver of § 2255 rights and appellate rights prior to accepting his plea).

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR") and sentencing occurred on August 20, 2004. At sentencing, defense counsel did not object to any of the guideline calculations in the PSR. The PSR calculated the guideline range to be a total offense level of 23, a criminal history category of III, and a range of 60 to 71 months. (D.E. 18, Sentencing Transcript ("S. Tr.") at 5).

The government recommended a sentence of 65 months, and the defense asked for a sentence at the lowest end of the guidelines. The Court sentenced Martinez to 65 months in the custody of the Bureau of Prisons, to be followed by a five-year term of supervised release, and imposed a $100 special assessment and 200 hours of community service. (D.E. 15, 16, S. Tr. at 10-11). Judgment of conviction and sentence was entered August 31, 2004. (D.E. 16). Consistent with his waiver of appellate rights, Martinez did not appeal. Martinez's timely § 2255 motion was filed on August 18, 2005. (D.E. 19).

## III. MOVANT'S ALLEGATIONS

Martinez's primary argument is that this Court did not have jurisdiction to indict and convict him because 18 U.S.C. § 3231 (which gives the federal courts original jurisdiction over all federal crimes) is not a validly enacted law. He argues that the statute is unconstitutional because it is "directly dependant" [sic] on the validity of Public Law 80-772, the codification of Title 18 of the United States Code." (D.E. 19 at 9). In support of his claim, he points to the legislative history of Public Law 80-772, which he claims was never correctly passed by both houses of Congress in the same session Congress, and thus is an invalid law. (See D.E. 19 at 10-15, 20-26). Accordingly, he claims that 18 U.S.C. § 3231 is unconstitutional, and "thus his indictment, conviction, and sentence are **null and void ab initio**." (D.E 19 at 15) (emphasis in original).

He also claims that the Public Law 80-773 is invalid for similar reasons. Consequently, he argues that 28 U.S.C. § 2255, which was amended by Public Law 80-773, is likewise unconstitutional. (D.E. 19 at 29-33). Because of § 2255's purported invalidity, Martinez posits that he is entitled to exercise his "common law right to the original habeas corpus." (D.E. 19 at 29).

In terms of his substantive arguments, Martinez makes two basic claims. First, he argues that the Court violated his Fifth and Sixth Amendment rights because it enhanced his sentence based on facts neither admitted by him nor found by a jury beyond a reasonable doubt. For support, he relies on the Supreme court's decision in United States

v. Booker, 125 S. Ct. 738 (2005). He also devotes a number of pages in his initial memorandum to arguing that Booker is applicable to his case, even though it was decided after his conviction became final.

Second, he claims that he was denied effective assistance of counsel during his criminal proceedings. Specifically, he claims that his counsel advised him to enter into a plea agreement prior to conducting full discovery and investigation into his case and without determining whether he had a valid defense. Martinez points to the docket sheet and the absence of any requests for discovery or pretrial motions. He claims that his plea was not voluntary and that, had his counsel investigated and found some unspecified "valid defense," he would have proceeded to trial instead of pleading guilty. (D.E 19 at 34-36). He also argues that his counsel was ineffective for filing to determine that the court lacked jurisdiction to proceed with the indictment and prosecution, relying on his legislative history arguments discussed supra.

In his "prayer for relief," he requests that this Court declare Public Laws 80-772 and 80-773 unconstitutional, declare 18 U.S.C. § 3231 and 28 U.S.C. § 2255 unconstitutional, declare that his judgment is contrary to the law and a direct violation of his constitutional rights, and order his immediate release. (D.E. 19 at 39).

In its response and motion for summary judgment, the government argues that Martinez's motion is barred by the waiver in his plea agreement. Alternatively, the government argues that Martinez's claims are subject to dismissal because the government's

motion and record of the case conclusively show that no relief is appropriate. In its supplement, the government also argues that Martinez's claims concerning Public Laws 80-772 and 80-773 find no support in Congressional history.

For the reasons set forth herein, Martinez's claims fail.

## IV. DISCUSSION

### A. Motion to Correct the Record & Request to Correct the Record

Before turning to Martinez's § 2255 motion, there are a number of other pending motions the Court will address. The first, which the Clerk received from Martinez on October 18, 2005, is titled as a "Motion to Correct the Record Related to the Filing of His Habeas Petition." (C.A. No. C-05-cv-423, D.E. 5; D.E. 32). The motion did not contain the criminal action number, instead referencing only the corresponding civil case. It was filed in the civil case, but was not filed in the criminal case. The Court has since directed the Clerk to file the motion in the criminal case, as well, and it is now docketed in Martinez's criminal case. (D.E. 32).

On November 3, 2005, the Clerk received from Martinez a "Motion to Correct the Record Related to the Filing of His Habeas Petition, Or Alternatively, Motion to Stay Proceedings Pending Filing of a Writ of Mandamus and/or Prohibition with the Fifth Circuit." (D.E. 25-26). In this motion, Martinez alleges that the court failed to file his October 18, 2005 motion, and reiterates his request for the relief sought in the earlier-filed motion, i.e., that the record be "corrected" to show that his initial filing was a habeas

petition pursuant to 28 U.S.C. § 451 et seq., instead of a motion pursuant to § 2255. (D.E. 25 at 3).

As noted, the Court has since directed the Clerk to file the first motion to correct in the criminal case, as well as the civil case. Thus, his motion is GRANTED insofar as it requests a "correction" of the record to show that he filed the October 18, 2005 motion.[2] Insofar as he requests that the court "correct" the record to show that his initial filing was a common law habeas petition and not a § 2255 motion (an argument raised in both motions to correct), the motions are DENIED.

As an initial matter, the Court notes that the docket sheet reflects that he filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, and that the title of his initial filing is "Movant's Motion Pursuant to his Common Law Right to Habeas Corpus and/or 28 U.S.C. 2255." (D.E. 19 at 1). Thus, it was accurate for the Clerk to have docketed his motion as one pursuant to § 2255, which is referenced in the title. In any event, irrespective of how the document is reflected on the docket sheet, the entirety of the document is before the Court. As discussed herein, the Court has considered and rejects Martinez's contentions that § 2255 is unconstitutional. It therefore finds that his motion is properly brought and construed as a § 2255 motion. (See infra at Section IV.C.).

Finally, Martinez's request for a stay of these proceedings pending a writ of

---

[2] The Court cautions Martinez, though, that it was he who failed to include the criminal case number is his filing, which is what caused it not to be filed in the criminal case.

mandamus to order this Court to "correct" the record is DENIED.

For the foregoing reasons, Martinez's motions to correct the record (D.E. 25-26, 31) are GRANTED IN PART and DENIED IN PART as set forth above.

**B. Motions to Take Judicial Notice**

In four separate motions filed on December 27, 2005, Martinez requests that the Court take judicial notice of various cases, attorney general's positions and of the "fraudulent" enrollment of Public Law 80-772. The Court has reviewed those documents and the authorities cited therein and considered those authorities in ruling on Martinez's § 2255 motion. Accordingly, those four motions are GRANTED insofar as they ask the Court to review the materials referenced therein. To the extent they ask for any additional relief, they are DENIED. Thus, his motions for judicial notice (D.E. 28, 29, 30, 31) are GRANTED IN PART AND DENIED IN PART as set forth above.

**C. Arguments Challenging the Validity of Public Laws 80-772 and 80-773**

As noted, Martinez claims that the statutes used to indict and convict him were never validly enacted and thus that the Court had no jurisdiction over his criminal case. He makes a similar argument with regard to 28 U.S.C. § 2255, and thus argues that he is bringing his motion pursuant to the common law writ of habeas corpus.

In particular, Martinez claims that the bills that eventually became Public Laws No. 80-772 and 80-772 never passed both houses of Congress. He contends that the bills were acted upon by the House, but not the Senate, before Congress adjourned. He claims that

the House version of the bill died at adjournment. Then, when the Senate version of the bill passed in the second session of the 80th Congress, and President Truman signed it, it did not become a law because it was not passed again by the House.

In support of his claim, Martinez relies heavily on two footnotes in the appendix to the opinion of Kennedy v. Sampson, 511 F.2d 430 (D.C. Cir. 1974).[3] The text of one of those footnotes describes the adjournment in July 1947 ( after the House passed the bills that would become Public Laws 80-772 and 80-773, but before the Senate did) as follows:

> The Senate and the House of Representatives adjourned on July 27, 1947 under a "conditional final adjournment" resolution, S. Con. Res. 33; 93 Cong. Rec. 10400. Pursuant to the resolution, the two Houses were to stand in adjournment until January 2, 1948, unless recalled into a session earlier by specified Senate and House leaders. In effect, the adjournment was a sine die adjournment, not an intrasession adjournment.

Kennedy, 511 F.3d 430, Appx. at n.4. As the government acknowledges, when Congress adjourns sine die, unpassed bills die of their own accord.[4] (D.E. 36 at 3). Thus, the footnotes lend some credence to Martinez's arguments.

But those footnotes must also be read in context. It is clear from the context that the intended meaning of those words was that the July 1947 recess was not an ***intrasession*** recess (which was what the rest of the Appendix referred to), but an ***inter***session recess.

---

[3] The issues and holding in Kennedy are irrelevant to Martinez's motion, and he does not rely upon any holdings in the case. Thus, the Court does not address them, nor the later authority calling those holdings into doubt.

[4] The term "adjournment sine die" is defined as "[t]he ending of a deliberative assembly's or court's session without setting a time to reconvene." Black's Law Dictionary 44 (8th ed. 2004).

That is, although the term "sine die" is used in the footnotes, it was intended to convey that an entire session of Congress was ending, rather than merely having a break in the session. It should not be read as Martinez reads it, to mean that the entirety of the Congress ended at the time. Instead, only one session did. The text where the footnotes occur make this clear, too, because it indicates that footnotes 4 and 5 refer to the 1st session of the 80th Congress, and the 2nd session of the 80th congress, respectively. Taken in context, those footnotes cannot be read literally to mean that there was an adjournment sine die of that Congress, such that all pending bills died. Moreover, as the government notes, the 80th Congress did not adjourn sine die in July 1947. When the first session adjourned, it did so to a date certain, not sine die. (See D.E. 36 at 3 and Exhibits A-1 and A-2) (adjournment on July 26, 1947 was until a date certain – January 2, 1948); see also Kennedy, 511 F.2d 430, Appx. at n. 4 (Congress adjourned in July 1947 until January 2, 1948).

In the government's response to these claims, it has provided a number of exhibits to show that the challenged laws were validly enacted. (D.E. 36, Exhibits C-2 through C-4). The Court finds the government's arguments on this point to be correct. In short, the laws challenged by Martinez were properly enacted into law and his contentions to the contrary are without merit.

**D. 28 U.S.C. § 2255**

The Court turns next to the substance of Martinez's claims in his motion to vacate his sentence. There are four cognizable grounds upon which a federal prisoner may move

to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996).  "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."  United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).  "[A] collateral challenge may not do service for an appeal."  United States v. Frady, 456 U.S. 152, 165 (1982).

The Court need not address whether Martinez has procedurally defaulted his claims by failing to appeal.  Rather, the Court concludes that he waived his right to file the claim based on Booker, and thus it does not reach the merits of that claim.  See infra Section IV.D.2.; United States v. Wilkes, 20 F.3d 651 (5th Cir. 1994) (enforcing defendant's voluntary and knowing waiver of § 2255 rights); United States v. McKinney, 406 F.3d 744 (5th Cir. 2005) (enforcing a waiver of appeal rights that was signed prior to the issuance of Booker).

His claim that he received ineffective assistance with regard to his plea, however, falls outside the scope of his § 2255 waiver, because it is a direct challenge to the validity of the plea and, thus, the waiver.  See, e.g., United States v. White, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed

assistance directly affected the validity of that waiver or the plea itself"); cf. United States v. Branam, 231 F.3d 931, 931 n.1 (5th Cir. 2000) (considering defendant's argument that United States breached the plea agreement, despite an appeal-waiver provision in the plea agreement). Thus, the Court turns first to this claim.

**1. Ineffective Assistance of Counsel As to Plea**

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071 (1995) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

As noted, Martinez claims that he received ineffective assistance as to his plea because his attorney failed to move to dismiss the indictment due to lack of jurisdiction,

and because she did not properly investigate his case. Thus, he claims that his plea was involuntary because he did not know about his jurisdictional "defense" and because of the alleged failure to investigate.

Martinez's claim that his attorney was somehow ineffective for failing to challenge the jurisdiction of the Court to indict, convict and sentence him fails because such an objection would have been pointless. As discussed in detail supra Section IV.C., the statutes that Martinez challenges as invalid were validly-enacted statutes. This Court had proper jurisdiction over his case. Accordingly, even if his attorney had objected on this ground, the outcome would not have been different. Thus, this claim fails. See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Martinez's claim that his plea was somehow involuntary because attorney failed to investigate is similarly infirm. Other than the facts he has raised challenging the Court's jurisdiction, he does not provide any information as to what the additional investigation would have revealed. His claim fails on this ground alone. United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."). Moreover, there is no presumption

of prejudice based on a failure to investigate. Woodard v. Collins, 898 F.2d 1027, 1029 (5th Cir. 1990). Because Martinez has not raised any specific facts that would show prejudice as a result of counsel's alleged failure to investigate, this claim fails.

Because the Court concludes that Martinez's only challenge to the plea agreement fails, then his waiver of § 2255 rights contained in his plea agreement is valid and enforceable. The effect of the waiver is discussed more fully in the subsequent section.

**2. Booker Claim and Waiver of § 2255 Rights**

It is clear from the rearraignment that Martinez understood that he was waiving his right both to appeal (except under certain circumstances) and to file any § 2255 motions, all that is required for his waiver to be enforceable. (R. Tr. at 18-19). See Wilkes, 20 F.3d at 653 (waiver is knowing if defendant understood he had a right, and understood he was giving it up). Martinez's statements under oath are entitled to a strong presumption of truthfulness. Wilkes, 20 F.3d at 653; United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Those statements support a finding that his waiver was knowing and voluntary.

Martinez's Booker claim clearly falls within the scope of his waiver. Moreover, the fact that Booker was not decided until after Martinez signed his waiver does not place his claim outside the scope of the waiver. The Fifth Circuit has clearly held that "Blakely [v. Washington, 542 U.S. 296 (2004)] and Booker do not alter the plain meaning of appeal-waiver provisions in valid plea agreements." McKinney, 406 F.3d at 746-47 & n.5; see also, e.g., United States v. Killgo, 397 F.3d 628, n.2 (8th Cir. 2005) (enforcing waiver of

appeal rights as to Sixth Amendment claim, noting that "[t]he fact that [defendant] did not anticipate the Blakely or Booker rulings does not place the issue outside the scope of his waiver"); United States v. Rubbo, 396 F.3d 1330, 1335 (11th Cir. 2005) (upholding waiver of appeal rights signed prior to Blakely in case raising Booker claim); United States v. Bradley, 400 F.3d 459, 465-66 (6th Cir. 2005) (enforcing defendant's waiver of appeal signed prior to Booker as barring his Booker claim and collecting federal circuit court authority in agreement).

In sum, the Court concludes that Martinez's waiver of his right to file a § 2255 motion is valid and enforceable. Thus, while his ineffective assistance claim as to his plea is denied on the merits, his remaining claim -- a claim premised on Booker -- falls within the scope of his waiver. That claim, therefore, is not properly before the Court.[5] See generally Wilkes, supra; White, supra; McKinney, supra. For these reasons, his § 2255 motion is DENIED in its entirety.

**E. Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Martinez has not yet filed a notice of appeal, this

---

[5] The Fifth Circuit has squarely held, moreover, that Booker is not retroactive on collateral review. United States v. Gentry, 432 F.3d 600, 605 (5th Cir. 2005) ("we join the several court of appeals that have held that Booker does not apply retroactively to initial § 2255 motions"). Thus, Booker does not provide a basis for relief to a defendant, such as Martinez, whose conviction became final before the case was decided. Gentry, 432 F.3d at 603-04 & n.2.

Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right ***and*** that jurists of reason would find it

debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

The Court concludes that reasonable jurists could not debate the denial of Martinez's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Similarly, as to the claims that this Court has addressed on procedural grounds, the Court finds that Martinez cannot establish at least one of the Slack criteria. Specifically, jurists of reasons would not find debatable this Court's ruling that his waiver bars his Booker claim. Accordingly, Martinez is not entitled to a COA as to his claims.

## V. CONCLUSION

For the above-stated reasons, the government's motion to dismiss (D.E. 23) is GRANTED and Martinez's motions for summary judgment, for directed verdict and to dismiss (D.E. 33, 38, 39) are DENIED. Martinez's motion under 28 U.S.C. § 2255 (D.E. 19) is DISMISSED WITH PREJUDICE. The Court also DENIES him a Certificate of Appealability. Additionally, the Court GRANTS IN PART and DENIES IN PART Martinez's motions for judicial notice and to correct (D.E. 25, 28-32), as discussed above.

Ordered this 6th day of May 2006.

Hayden Head
HAYDEN HEAD
CHIEF JUDGE